THE CREDITORS OF AVALO SÁNCHEZ *v.* THE ESTATE OF DÍAZ.

APPLICATION for a Writ of *Certiorari.*

No. 17.—Decided February 21, 1907.

CERTIORARI—WHEN WRIT WILL ISSUE.—The writ of *certiorari* will issue not only in cases where the proceedings or the records in an action have been terminated, but even when the same are pending provided the procedure followed by the inferior court is contrary to law.

INSOLVENCY PROCEEDINGS—TERM THEREOF.—An order of the inferior court entered in insolvency proceedings holding the prosecuting creditor to have abandoned the same to his prejudice, with the costs, is not sufficient to warrant the presumption that the proceedings have been terminated, unless the judge has so expressly declared and ordered the judicial intervention to cease, and the occupation and custody of the property of the insolvent to be discontinued, as these acts are the direct consequences of the reversal of an order declaring a party to be insolvent and should take effect immediately upon the abandonment of the prosecution by the creditor or creditors of the insolvency proceedings and upon their request that they be deemed to have abandoned the same.

ID.—ABANDONMENT BY PROSECUTING CREDITOR—RATIFICATION OF INSOLVENT.— The ratification ordered by the inferior court in relation to a writing filed in the case at bar by the prosecuting creditor abandoning the proceedings and moreover signed by the insolvent in evidence of his agreement thereto, has reference solely to the prosecuting creditor, because aside from the fact that

the insolvent not only did not oppose the termination of the insolvency pro-
ceedings, but showed his willingness and asked for the cancellation of the
entries made in the books of the registry of property in regard to his in-
capacity to administer his property by reason of the insolvency, makes it un-
necessary for the insolvent to ratify the writing filed by the creditor aban-
doning the proceedings.

ID.—CERTIORARI—CAPACITY OF PETITIONER.—Where in insolvency proceedings the
occupation and receivership of certain properties are ordered, and an ad-
ministrator and receiver is appointed to take charge of the same, the owner
of such property has the necessary capacity to apply for a writ of *certiorari*
and thereby secure the review of the insolvency proceedings.

ORDINARY, ADEQUATE, AND SPEEDY REMEDY.—Although the writ of *certiorari* will
not issue where there is an ordinary remedy, such remedy must be speedy
and adequate to correct the errors of procedure and repair the damages suf-
fered by the petitioner.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for petitioner.

*Mr. Hord* for the opposition.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

Attorney José de Guzmán Benítez, on behalf of the Estate of María Díaz, widow of Veve, has applied to this Supreme Court for a writ of *certiorari,* requesting the District Court of the Judicial District of San Juan to transmit to this Supreme Court the record of the proceedings in involuntary insolvency instituted against José Avalo Sánchez, alleged to be terminated, in order that this court may review the same, and, should it be necessary, reverse and annul the proceedings opposed to the provisions of law, which are being followed by said district court in the prosecution of the aforesaid insolvency case, wherein it is also exceeding its jurisdiction to the serious detriment of the rights of the petitioners.

The facts upon which they base their petition are the following:

That by order of August 22, 1891, made by the former Court of First Instance of the District of San Francisco of this capital, on the petition of Vicente Balbás y Capó as, a creditor of José Avalo Sánchez, the latter was declared in involuntary insolvency, letters rogatory being issued to the

judge of first instance of the district of Humacao, at the petition of said Balbás, requesting the transmission to the court issuing them, for consolidation with the insolvency proceedings, of the record of the execution proceedings which María Díaz, the widow of Veve, had been prosecuting since the year 1889 against said Avalo Sánchez, for the recovery of a mortgage credit which he had acknowledged in her favor upon an estate belonging to him, called "Bello Sitio," situated in the municipal district of Fajardo. The judge of Humacao refused this consolidation on the ground that execution proceedings directed only against the property mortgaged could not be consolidated with insolvency proceedings, and, furthermore, because the execution proceedings in question had been terminated by the order of sale made therein upon appeal, by the former *Audiencia Territorial* of this Island, directing the execution to be prosecuted until the property attached had been sold at auction.

That pursuant thereto, the compulsory proceedings against the "Bello Sitio" estate were prosecuted, and the latter was offered at public sale and awarded to the execution creditor, the widow of Veve, in payment of her claim for 10,939.34 *pesos,* the judge of first instance of Humacao, Rómulo Villahermosa, executing in her favor the proper deed of award before Notary Marcelino Estevánez, which deed was recorded in the registry of property in favor of said widow of Veve, she being thus put in possession of the estate sold at public auction.

Nothwithstanding the fact that the judge of first instance of the San Francisco court had admitted that the consolidation sought by Vicente Balbás, who had initiated the insolvency proceedings, did not lie, he subsequently reversed his action and again applied to the Humacao judge for the consolidation of the execution proceedings referred to, and the record having been transmitted to him without opposition on the part of the execution creditor, the widow of Veve, inasmuch as the execution proceedings had terminated and she

was in possession of the estate sold, the judge of San Francisco, by order of December 26, 1891, without granting her a hearing, declared null and void all the proceedings had subsequent to August 27, 1891, the day when the Humacao judge was first required to make the consolidation of the execution proceedings and, consequently, also declaring null and void the proceedings under which the public sale was held, the approval of the award, the liquidation of charges, the deed of award, the proceedings to give possession, and all the entries made in the registry of property relating to the notice of attachment and the record of ownership of the estate of "Bello Sitio" made in favor of said widow of Veve. Notice of this decison of the San Francisco judge was not served personally upon her, but the same was announced in open court.

That the order having issued to the Registrar of Property of Humacao to make the cancellations decreed, the registrar refused to make them, on the grounds, among others, that the only court having jurisdiction to order the cancellation of the cautionary notice of the attachment was the court of that city and district, in accordance with article 84 of the Mortgage Law; and as to the cancellation of the records of ownership, because the nullity of the title upon which the records had been made had not been declared in a final judgment rendered in a declaratory action, to which María Díaz, the widow of Veve, should have been a party, in accordance with articles 79, 82 and 83 of the Mortgage Law, the decisions of the Supreme Court of Spain of February 7, 1868, and March 10, 1873, and the decisions of the Director General of April 13, 1874, February 16, 1883, November 29, 1881, and July 1, 1886.

That as a consequence of its last decisions the San Juan court again ordered the attachment and custody of the estate of "Bello Sitio," and appointed a receiver and administrator thereof, the attachment being carried out whereby the widow of Veve was deprived of the estate, and one Tomás García appointed the receiver and administrator thereof, under a bond of 2,000 *pesos,* which he had never furnished.

That while all this was taking place with respect to the administration of the estate of the insolvent, nothing had been done in the other proceedings relating to said estate, because neither had the creditors been called, nor any meeting been held, nor any attempt made to appoint receivers, nor had any steps been taken tending to show that insolvency proceedings were being prosecuted, and it is to be observed that, subsequently, the record of the proceedings relating to the administration of the estate of the insolvent, and the initial proceedings thereof, disappeared, as well as the record of the original proceedings of a declaratory action, prosecuted and lost by Avalo Sánchez, seeking the nullity of the execution proceedings.

Under these circumstances, on April 6, 1900, Vicente Balbás y Capó, the only creditor who had instituted the insolvency proceedings, presented a statement to the former District Court of San Juan, abandoning the prosecution of the insolvency proceedings, which statement was also signed by the insolvent as an evidence of his agreement to the discontinuance, upon which statement an order was made on the 23d of said month of April, conceived in the following terms:

"Considered, let it be ratified, and a decision will be rendered;" and Vicente Balbás having ratified it on the same date, the district court made a new order on the same date holding Vicente Balbás to have abandoned and discontinued the prosecution of the insolvency proceedings to his prejudice, and with the costs. Notice of this decision was served on the latter on the 10th of the following month of May, since which date no steps whatever were taken looking to the continuation of the insolvency proceedings.

That on May 4, 1901—that is to say, the following year—Attorney José de Guzmán Benítez presented a petition to the district court on behalf of the widow of Veve, alleging that inasmuch as Vicente Balbás, who had instituted the insolvency proceedings and was the only known creditor of the insolvent, had withdrawn from the prosecution thereof, and the court

had admitted said withdrawal, there was no longer any reason for the consolidation of the execution proceedings instituted by the widow of Veve, nor for the seizure and attachment of the estate of "Bello Sitio"; he therefore prayed that said consolidation and seizure, and the appointment of a receiver, be left without effect, and that the estate be restored to the widow of Veve, its owner. The court granted this petition in an order of May 15, 1901, signed only by the presiding judge thereof, J. R. F. Savage, and the estate "Bello Sitio" was returned to the widow of Veve on May 20, 1901.

That an incidental issue having been raised by the insolvent seeking to obtain the annulment of the decision of May 15, on account of its having been signed only by one of the judges of the former district court, the present District Court of San Juan, after hearing the widow of Veve, made an order on May 31, 1905, annulling said order of May 15, 1901, and restoring matters to the state in which they were before said date, and allowing the insolvent a period of 10 days to make answer to the petition of the widow of Veve of May 4, 1901.

That an appeal from this decision having been taken by the widow of Veve, which was dismissed because an appeal did not lie from said order, and a hearing having been had to decide her petition of May 4, 1901, the district court rendered a decision thereon on March 30, 1906, ordering that the decree of the District Court of San Juan of April 23, 1900, be executed; that José Avalo Sánchez ratify Mr. Balbás' petition for a withdrawal, and stating that, after the ratification thereof by Mr. Avalo Sánchez, the court would decide the petition of the widow of Veve of May 4, 1901; that in the meantime the decision of the court of May 31, 1905, be executed in every respect, and consequently, that the estate "Bello Sitio" be again attached, a depository who should furnish bond, to be designated from among the persons proposed by the interested parties within the period of 10 days.

That the widow of Veve had taken an appeal from this

decision on the 4th of April following, which was also dismissed by this Supreme Court, because the decision appealed from of March 30, 1906, was not appealable.

The legal grounds upon which counsel for the petitioners bases his application for a writ of *certiorari* are the following:

1. That the District Court of San Juan, of its own motion and without authority or jurisdiction, reviewed and modified the meaning and effects of an order which had become final, made by the former District Court of San Juan on April 23, 1900, which order had been executed and complied with on the same day, from which time it produced all its legal effects in the said district court.

2. That the District Court of San Juan also exceeded its jurisdiction in this matter, because the proceedings having terminated in accordance with the provisions of the former Law of Civil Procedure which governed the prosecution of involuntary insolvency proceedings, the court, upon erroneous grounds, refuses to complete the proceedings consequent upon the termination of the insolvency proceedings, by restoring matters to their prior state, and returning the property attached in the insolvency proceedings to its legitimate owner.

3. Because the court proceedings not in conformity to law tending to deprive the petitioner of property which belongs to her and which is recorded in her name in the registry of property, without any declaratory or ordinary action having been had in which the right of ownership was discussed, and without any judgment having been rendered depriving her of that right; whereby not only are the provisions of the law governing insolvency proceedings violated, but also the legal principle that no one can be deprived of his property without being heard and defeated in court; and,

4. Because the court violates the provisions of the former Law of Civil Procedure which, for the institution of involuntary insolvency proceedings, requires:

1. That there be one or more creditors to institute the

same, whereas, in this case, there are no longer any creditors petitioning therefor;

2. That there be a number of creditors whose claims constitute the liabilities of the insolvent estate, while it does not appear that there is any creditor in this case, nor does the record contain even a statement of the debts of the insolvent;

3. That the property of the insolvent be attached and placed in custody, while here it is only sought to seize an estate belonging to María Díaz, the widow of Veve, recorded in the registry of property in her name; and,

4. That upon the conclusion of the insolvency proceedings the consolidation of proceedings and custody of property be vacated, and that such property be restored to the persons to whom it may belong; and yet here, nevertheless, without action on the part of any legitimate party, without creditors—in a word, without insolvency proceedings—it is sought to perform acts peculiar to involuntary insolvency proceedings, to the prejudice of the sacred right of property of a third person.

On these grounds, and as the petitioner lacks any other ordinary remedy by which to obtain legal redress in this case, inasmuch as the two appeals taken were dismissed by this Supreme Court, she has recourse to the extraordinary remedy granted her by the act entitled "An act authorizing writs of *certiorari*," passed by the Legislative Assembly of Porto Rico and approved March 10, 1904, according to which the Supreme Court of Porto Rico is authorized to issue writs of *certiorari* to an inferior court, requiring the latter to send to said Supreme Court the record of a cause already terminated in cases where the procedure is not according to the course of law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds; and she closes by praying the court to issue a writ of *certiorari* to the District Court of San Juan requiring it to forward to this Supreme Court, in the state in which it may be, the record of the voluntary insol-

vency proceedings of José Avalo Sánchez, and the proceedings had in the inferior court to the date upon which said writ may be issued, and, after hearing the matter, that it reverse and annul all the decisions and proceedings in the district court from and after March 30, 1906, including the order of said date, and that in lieu thereof a decision be rendered as prayed in the petition of María Díaz, the widow of Veve, of March 4, 1901, and that as a consequence the attachment and custody of the estate of "Bello Sitio" be vacated, and that the latter be restored to its legal owners, the successors in interest and heirs of said María Díaz, the widow of Veve.

This petition was sworn to by Attorney Guzmán Benítez on account of the absence from San Juan of the persons interested, who constitute the estate of the widow of Veve.

This application for a writ of *certiorari* has been contested by Attorney Henry F. Hord, on behalf of José Avalo Sánchez, who alleged, among others, the following grounds:

1. That the petitioners are not parties to the insolvency proceedings and, consequently, lack legal capacity to apply for a writ of *certiorari*.

2. That, as the insolvency proceedings of José Avalo Sánchez are still pending in the District Court of San Juan, such proceedings cannot be considered to have been terminated, as alleged by the petitioners and as required by the law in order that a writ or *certiorari* may issue; and,

3. Because, whether the insolvency proceedings are considered as pending or terminated, the petitioners still have the remedy of an ordinary action for the recovery of their property, in the event of their having been unjustly deprived thereof in the insolvency proceedings.

Now, this Supreme Court having issued the writ to the District Court of San Juan, directing it to forward the records of the insolvency proceedings, and such records having been received, with the exception of the first section of the record relating to the declaration of insolvency, and another

section thereof relating to the administration, which as the petitioners allege was lost, and of the record of the execution proceedings prosecuted by the widow of Veve, which appear to have been returned to the District Court of Humacao, the hearing was had with the attendance of counsel for the parties, and the moment has arrived for this Supreme Court to render such decision as may be proper in this case.

The act of the Legislative Assembly of this Island, authorizing writs of *certiorari* and approved March 10, 1904, defines such writs as "a writ issued by a superior to an inferior court requiring the latter to send to the former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where the procedure is not according to the course of the law, and to complete the proceedings when the lower court refuses to do so upon erroneous grounds."

Hence, according to this definition of the law, a writ of *certiorari* lies, not only when the cause or proceedings are terminated, but also when they are pending, provided the procedure in the lower court is not according to the course of the law.

In this case the insolvency proceedings of José Avalo Sánchez cannot be considered as terminated, because, although the only creditor who instituted them, desisted from the prosecution thereof, and the judge admitted his discontinuance of the proceedings to his prejudice, and taxed the costs against him, said judge did not expressly declare the proceedings to have definitely terminated, since he did not order the judicial intervention to cease, which has continued; nor did he order the dissolution of the attachment of the property of the insolvent, which decisions were consequent upon a revocation of the order of the declaration of the insolvency, in accordance with article 1165 of the former Law of Civil Procedure which may apply to this case by analogy; and, although the order of Judge Savage, of the former District Court of San Juan, of May 15, 1901, may be said to have put an end to the insolvency

proceedings, this order was made the subject of an incidental issue raised by Avalo Sánchez alleging nullity, and, a hearing having been had thereon with the attendance of the widow of Veve, it was allowed by order of the District Court of San Juan of May 31, 1905, by which the former order of May 15, 1901, was vacated and restored matters to the state in which they were when said order was made, on the ground that the latter had been authorized by only one of the judges composing the District Court of San Juan, instead of the three judges forming the full bench, as should have been done in view of the final nature of the decision. This decision became final through the dismissal by this Supreme Court of the appeal taken therefrom by the widow of Veve. Then, continuing the proceedings to decide upon the petition filed by her on May 4, 1901, which led to the making of the order of May 15, 1901, which was annulled, the order of March 30, 1906, was issued, by which Judge Emilio del Toro, of the District Court of San Juan, directed that upon the execution of the order of the former court of the district of San Juan of April 23, 1901, and the ratification by Avalo Sánchez of Balbás' statement of April 6, of the same year abandoning the proceedings, a decision upon the petition of the widow of Veve of May 4, of the following year would be rendered, and that in the meantime the decision of May 31, 1905, by which the proceedings were restored to the state in which they were when Judge Savage made the annulled order of May 15, 1901, be complied with in every respect; and, consequently, that the estate of "Bello Sitio" be again attached in the insolvency proceedings and a receiver under a proper bond appointed, etc. This decision was also appealed from by the widow of Veve and the appeal was likewise dismissed by this Supreme Court, because the decision appealed from was not in the nature of a final judgment.

But we have already seen that the fact that the insolvency proceedings had not terminated would be no obstacle to the issuance of a writ of *certiorari* had the procedure in the lower

·court not really been in accordance with the law, and when the purpose of this appeal is to terminate the proceedings.

It cannot be denied that the procedure followed in these insolvency proceedings is illegal, because apart from the irregularities which may have been committed in the declaration of the insolvency, upon which point we can say nothing because we have not before us the first section of the record which must contain all the antecedents of the case and which are alleged to have been lost, it is indisputable that these voluminous records have nothing in them about insolvency proceedings except the name, and their purpose seems to have been no other than to hinder the execution of the judgment of sale rendered in the execution proceedings instituted by the widow of Veve against the estate of "Bello Sitio," and the attachment of this estate in the insolvency proceedings which Avalo Sánchez finally secured upon the order made on December 26, 1893, by the former Court of the District of San Francisco of this capital. By this order all the proceedings had before the judge of Humacao in the said process, after he had for the first time been called upon by the judge of San Francisco to consolidate said execution proceedings with the insolvency proceedings, were declared to be null and void, and, consequently, also the sale and award of the estate "Bello Sitio"` to the widow of Veve, as well as the deed of award and record thereof in the registry of property made in favor of said lady; all of which was accomplished in an action wherein she was given no opportunity for a hearing, and thus depriving her of her property without having been heard and defeated in the proper action as prescribed by law.

In the meantime, after more than fifteen years since Avalo Sánchez was declared an involuntary insolvent, it does not appear who his creditors are, nor whether they had ever been notified of the first meeting for the appointment of receivers, nor has any progress been made in the insolvency proceedings beyond the consolidation of the execution proceedings of the widow of Veve and the attachment of the estate "Bello

Sitio,'' notwithstanding the fact that said lady was prejudiced and that she had her ownership recorded in the registry of property.

These proceedings are contrary to law and should not continue any longer, especially when the only creditor who instituted the proceedings, Vicente Balbás, having abandoned his prosecution as far back as April, 1900, when he was declared. to have discontinued them to his prejudice, with the costs. against him, by order of the 25th of said month of April, the judicial intervention should have ceased on that date and the attachment and custody of the property should have been vacated as proscribed by article 1615 of the former Law of Civil Procedure, for cases where an order declaring insolvency has been revoked, which, by analogy, could and should have been applied in this case.

Counsel for the widow of Veve so prayed in his petition of the 4th of May of the following year, which petition was granted by Acting Presiding Judge Savage of the former District Court of San Juan in his order of the 15th of said month of May; but this order having been set aside by another of the new district court of May 31, 1905, matters reverted to the condition in which they stood when said order of May 15, was. made, the court reserving decision on the petition of the widow of Veve, for which purpose said petition was referred to the. insolvent, José Avalo Sánchez, for answer within the period of 10 days.

Answer was made by the latter and a day set for the decision upon the pending petition of the said widow of Veve for a termination of the insolvency proceedings and the dissolution of the attachment and custody of said property. Upon the hearing thereof the new order of March 30 of last year was made, wherein the district court, instead of deciding the pending petition of the widow of Veve, again postponed the decision and, presuming that the order of April 23, 1900, made

upon the statement of Mr. Balbás abandoning the proceedings had not been executed, directed that the same be complied with, and announced that upon the ratification of said statement by Avalo Sánchez the petition of the widow of Veve of May 4, 1901, would be decided; it being further ordered therein that the estate "Bello Sitio" be attached in the insolvency proceedings pursuant to the decision of May 31, 1905, which directed that the proceedings be restored to the state in which they were at the time of issuing the annulled order of May 15, to which we have already referred.

We believe that this decision of the District Court of San Juan should be reversed, because it misconstrues the meaning and real scope of the order of April 23, 1900, and orders the execution thereof, although it had already been executed and had produced its effect, and introduces further delay in the conclusion of these insolvency proceedings.

We have already seen that the order of April 23, 1900, which was rendered on the statement of Balbás, abandoning the insolvency proceedings and the execution whereof is now ordered, is limited to directing its ratification and announcing that action would then be taken. An evidence of the fact that it referred exclusively to Balbás is that after the latter had ratified his statement, the court made an order on the 23d of said month of April declaring that he had abandoned the prosecution of the insolvency proceedings to his prejudice, with costs against him, and did not require the ratification thereof by Avalo Sánchez, as it surely would have done had it understood that he should also ratify Balbás' statement. Furthermore, Avalo Sánchez, in making answer to the pending petition of the widow of Veve, of May 4, 1901, did not make the slightest objection in regard to the non-execution of the order under consideration, as he naturally would have done had he believed that his ratification thereof was needed. This apart from the fact that Avalo Sánchez had not objected to the termination of the insolvency proceedings throughout the entire period elapsing since the year 1900, when he signed

Mr. Balbás' statement abandoning the proceedings as an evidence of his agreement, but, on the contrary, had prayed the court to issue letters rogatory to the Humacao court requesting that the registrar of property of that district be ordered to cancel the entry in the registry recording his incapacity to administer property from the moment he was declared an involuntary insolvent, on the ground that such formality answered no further purpose, said petition having been granted by the court, which shows very clearly the agreement of Avalo Sánchez to the termination of these insolvency proceedings and the absolute needlessness of his ratifying Mr. Balbás' statement abandoning the proceedings, as ordered by the decision of March 30, of last year under consideration.

This decision, therefore, must be set aside, and as to the petition of the widow of Veve of May 4, 1901, requesting the dissolution of the attachment and custody of the property and the return of the "Bello Sitio" estate, inasmuch as by the abandonment of the insolvency proceedings by Balbás, the only creditor who prosecuted them, the latter no longer answer any purpose; wherefore the judicial intervention should cease. We are also of the opinion that there is no longer any reason for the consolidation of the execution proceedings with the insolvency proceedings prosecuted in the Humacao court by the widow of Veve against the insolvent, José Avalo Sánchez, and, consequently, that matters should be restored to the state in which they were when the consolidation was ordered, the records to be returned to the court of origin and the attachment and custody of the property dissolved, said property being left at the free disposal of the insolvent, Avalo Sánchez, unless prevented by some other legal reason, with the exception of the "Bello Sitio" estate, which shall remain at the disposal of the heirs of said widow of Veve, thereby annuling and leaving without effect the order of the former Court of the District of San Francisco of this capital, issued December 26, 1893, which annulled all the proceedings had for the sale of the "Bello Sitio" estate at public auction, including

the deed of award of said estate to the widow of Veve and its record in the registry of property; a decision which, as we have repeatedly said, was rendered without the form of a trial and in manifest violation of the most elementary rules of procedure.

With regard to the capacity of the heirs of the widow of Veve to take this appeal, it cannot be denied them for the very reason that they were compelled to appear in these proceedings to defend their rights, as was declared by this Supreme Court in dismissing the appeal taken from the decision of March 30 of last year, said appeal being dismissed, not because they lacked capacity to take it, which capacity this court expressly recognized, but because this decision appealed from was not in the nature of a final judgment.

As to the other objection, also alleged by counsel for the insolvent, that a writ of *certiorari* did not lie because the petitioners had the remedy of an ordinary action for the recovery of the "Bello Sitio" estate, should the petitioner believe that they had been unjustly deprived thereof, we think that this objection is not well taken because, although it is true that the heirs of the widow of Veve would always have that remedy for the reparation of the damage which might have been caused them by the decision of the court in depriving them of the possession and ownership of the "Bello Sitio" estate, it is not an adequate remedy for reparation of the damage caused the petitioners by the said judicial decision, and, consequently, it is not an obstacle to the success of this writ of *certiorari,* according to the jurisprudence established by the Supreme Court of California in the case of *The People* v. *Turner* (1 Cal. Rep., 192). In this case the doctrine is established that "when an error has been committed in the proceedings of a civil or criminal cause and said error cannot be reviewed upon a writ of error, the adequate procedure to correct such an error is a *certiorari,*" unless the laws prescribe some other remedy, which, according to the doctrine announced in the case of *Noble* v. *Superoir Court* (109 Cal., 523) must be clear,

rapid and adequate, which circumstances do not occur in an action for recovery that might entail excessive delay and be inadequate for the decision of the questions at issue in this application for a writ of *certiorari,* and which questions are absolutely foreign to an ordinary action involving ownership.

In view of the considerations stated, this court holds that this application for a writ of *certiorari,* setting aside the decision of the District Court of San Juan of March 30 of last year, should be granted, and deciding upon the petition of María Díaz, the widow of Veve, of May 4, 1901, that there being no further reason for the insolvency proceedings, inasmuch as the only creditor prosecuting them, Vicente Balbás y Capó, has desisted therefrom, the judicial intervention in said proceedings should cease, and the consolidation therewith of the execution proceedings prosecuted in the former Court of First Instance of Humacao by María Díaz, the widow of Veve, against José Avalo Sánchez, should be left without effect, as also any other consolidation similarly included in this case, and the proceedings restored to the state in which they were when such consolidation was ordered. The records should be returned to the court of origin, and the seizure and custody of the property dissolved, such property to be left at the free disposal of José Avalo Sánchez, unless prevented by some other cause, with the exception of the estate "Bello Sitio," which shall remain at the disposal of the heirs of María Díaz, the widow of Veve. The records of the insolvency proceedings are ordered to be returned to the District Court of San Juan for filing in the office of the secretary of the court, without any special taxation of costs.

*Accordingly decided.*

Justices Hernández, MacLeary and Wolf concurred.

Mr. Justice Figueras did not take part in the decision of this case.